**B.T. and (B)'s Play and Learn Child Day Care Center, Petitioners,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 2003.

Decided July 8, 2003.

Richard B. Henry, Honesdale, for petitioners.

Howard Ulan, Harrisburg, for respondent.

Before COLINS, President Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

B.H.[1] and (B's) Play and Learn Child Day Care Center (collectively referred to as Petitioners) petition for review of a decision of the Pennsylvania Department of Public Welfare (DPW), dated January 2, 2003, affirming the order dated August 30, 2002, of DPW's Bureau of Hearings and Appeals. By its order dated August 30, 2002, DPW's Bureau of Hearings and Appeals upheld the recommendation of its hearing official, granting summary judgment in favor of DPW and thereby revoking Petitioners' certificate of compliance to operate a child day care center pursuant to 55 Pa.Code § 20.71(b)(5). We affirm.

Petitioner B.H. owned and operated (B's) Play and Learn Child Day Care Center, a licensed day care facility located in Wayne County, Pennsylvania. B.H. also worked in a child care position in that facility. On April 2, 2002, Petitioners allowed a child to leave the facility unnoticed and walk to a main road and then down the road. Petitioner B.H. was the only person working at the time of the incident. The child was discovered by a passing Wayne County Deputy Sheriff who alerted Petitioners to the location of the child.

On April 9, 2002, DPW initiated an investigation. On April 17, 2002, Wayne County Children and Youth Services ("CYS") filed an indicated report of child abuse, naming B.H. as the subject perpetrator. On May 29, 2002, DPW, through its ChildLine Registry, Office of Children, Youth and Families (OCYF), sent a letter to B.H., notifying her that she was the subject of an indicated report of child abuse and that she had forty-five (45) days from the date of the notice to seek amendment or destruction of the report by mailing a written request to the Secretary of DPW (Secretary). (R.R. at 5.) Specifically, the letter read, in part, as follows:

You are listed on the report as the perpetrator. Persons named as perpetrators of child abuse may not be hired in child care programs of public or private schools under certain conditions according to Act 33 of 1985, and Act 151 of 1994. You may have the right to receive services, which are intended to prevent further abuse or neglect, through the county children and youth agency. Please refer to the report number listed above when making your request. Should your address change before the child becomes age 23, please inform this office.

---

1. Although the petition for review, caption and various filings identify one of the Petitioners as "B.T.," various other filings identify said Petitioner as "B.H." Based upon a review of the record, it appears that Petitioner is properly referred to as "B.H." Therefore, she will be referred to as "B.H." throughout the text of this opinion.

**438**

Only perpetrators of child abuse may request that indicated reports be amended or destroyed if they believe the report is inaccurate or that it is not being maintained in accordance with the law. ALL REQUESTS MUST BE MADE IN WRITING WITHIN 45 DAYS FROM THE DATE OF THIS NOTICE to the Secretary of Public Welfare.... If this request is denied, perpetrators may have a right to a hearing.

*Id.*

B.H. did not file a written appeal or written request that the indicated report of child abuse be amended or destroyed. (R.R. at 30). The statutory deadline for B.H. to file an appeal of the indicated report of child abuse expired, and nothing in the record indicates that B.H. made any other effort to appeal the indicated report of child abuse. *Id.*

B.H. contends that she verbally objected to the indicated report of child abuse to CYS and that she understood from her discussions with CYS that she did not need to engage counsel.[2] (R.R. at 29–30). B.H. contends that she did not file an appeal of the indicated report of child abuse because of her discussions with CYS. *Id.* Additionally, Petitioners claim that on May 8, 2002, they submitted a "plan to correct noncompliance items," something that Petitioners allegedly believed remedied the previous notice and removed Petitioners from further proceedings.

By letter dated June 27, 2002, OCYF informed B.H. that it had made a preliminary decision to revoke Petitioners' certificate of compliance to operate [B]'s Play and Learn Child Day Care Center because of the filing of the indicated report of child abuse, related statutory and regulatory violations, and mistreatment or abuse of a child in care.[3] (R.R. at 6–8). That letter specifically states that Petitioners "have the right to appeal the Department's decision" within thirty (30) days. (R.R. at 7). After receipt of said letter, Petitioners retained counsel.

**2.** In their brief, Petitioners assert that B.H. "spoke with somebody from [DPW] and also with an agent from [CYS]. Both those individuals apparently assured [Petitioners] that there was no need to pursue any amendment or request for destruction of the indicated report." (Petitioners' Brief at page 9.) Petitioners cited findings of fact nos. 6 and 7 of the adjudication by DPW's Bureau of Hearings in support of those statements. However, those findings of fact do not support the above statements by Petitioners. Rather, those findings only state that that "B.H. made a verbal appeal to the CYS that she opposed the report of the indicated finding of child abuse" and that "B.H. did not appeal the indicated finding of child abuse based upon representations made to her by the CYS that she did not need to hire counsel." (Findings of fact nos. 6 and 7, R.R. at 29–30). Therefore, we note that the record is void of any evidence that DPW or CYS informed Petitioners that there was no need to pursue any amendment or request for destruction of the report.

**3.** DPW stated in the letter that it investigated and verified violations of DPW's child care regulations found at 55 Pa.Code § 3270.54, relating to minimum number of facility persons in the child care facility, and 55 Pa.Code § 3270.113(a), relating to supervision of children. The letter noted that CYS filed an indicated report of child abuse. It further stated that:

[DPW's] preliminary decision to revoke the certificate of compliance [was] based upon noncompliance with [DPW's] regulations (62 P.S. § 1026(b)(1); 55 Pa.Code § 3270.1 *et seq.*); mistreating or abusing individuals cared for in the facility (62 P.S. § 1026(b)(5); 55 Pa.Code § 20.71(a)(5)); and the fact that the legal entity, owner, operator or a staff person at the facility is named as a perpetrator in an indicated report of child abuse (55 Pa.Code § 20.71(b)(5)).

By letter dated July 16, 2002, Petitioners filed an appeal of DPW's preliminary decision to revoke the certificate of compliance. (R.R. at 10). On August 12, 2002, DPW filed a motion for summary judgment as a matter of law and a brief in support of the motion. On August 22, 2002, Petitioners timely filed a response to the motion for summary judgment. On August 30, 2002, DPW's Bureau of Hearings and Appeals granted DPW's motion for summary judgment "for the reason that there is no dispute of the material facts that the victim child named in an indicated report of child abuse was receiving care in the [Petitioners'] day care center at the time of the incident of abuse, or that [Petitioner B.H.] ... was named as the perpetrator in such indicated report of child abuse, thus supporting the preliminary decision to revoke her certificate of compliance to operate a child day care center, 55 Pa.Code § 20.71(b)(5)." (R.R. at 32, 50). Following an application for and the granting of reconsideration, the Secretary entered a final order dated January 2, 2003, upholding the decision of DPW's Bureau of Hearings and Appeals. Thereafter, Petitioners filed the subject petition for review with this Court.

■ On appeal,[4] Petitioners argue that the order dated January 2, 2003, affirming the grant of summary judgment in favor of DPW, should be reversed and that Petitioners should be permitted to file an appeal *nunc pro tunc* to the indicated report of child abuse. They further argue that the letter dated May 29, 2002, did not fully or completely identify the "requirement to appeal," and that the letter dated June 27, 2002, was actually the first notice

that Petitioners received as to any right to appeal. Petitioners claim that they did not realize the need to file an appeal in response to the letter dated May 29, 2002, and note that the word "appeal" does not appear in that notice.

DPW argues that Petitioners cannot collaterally attack the validity of the indicated report of child abuse as part of the appeal of the revocation of the certificate of compliance to operate a day care facility, only the latter of which is now before this Court. Alternatively, DPW argues that Petitioners cannot seek permission in this proceeding to challenge the indicated report of child abuse by way of a *nunc pro tunc* appeal. DPW also argues that Petitioners cannot seek a *nunc pro tunc* appeal from this Court when no appeal of the indicated report of child abuse was ever filed with DPW. Finally, DPW argues that Petitioners' *nunc pro tunc* claim lacks merit.

Based upon our review of the record, it is apparent that Petitioners essentially seek to collaterally attack the indicated report of child abuse through the present proceeding relating to the revocation of the certificate of compliance. Notwithstanding that the indicated report of child abuse and the revocation of certificate of compliance proceeding arose from overlapping facts, they are distinct legal proceedings, predicated on separate statutes and regulations. *See* Sections 1001–1031 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 1001–1031. (relating to certificate of compliance); the Child Protective Services Law, 23 Pa.C.S. § 6301–6385 (relating to child abuse); 55 Pa.Code § 3270 (relating

---

4. The standard of review of this Court from a determination of the DPW is to determine whether constitutional rights were, violated, an error of law was committed, or findings of fact were unsupported by substantial evidence. *Northwood Nursing and Convalescent Home v. Department of Public Welfare*, 110 Pa.Cmwlth. 40, 531 A.2d 873 (1987), *affirmed*, 523 Pa. 483, 567 A.2d 1385 (1989).

to certificate of compliance); and 55 Pa. Code § 3490 (relating to child abuse). Petitioners filed an appeal only from the revocation of the certificate of compliance, not the indicated report of child abuse. Petitioners, through Petitioner B.H., never filed an appeal, timely or otherwise, of the indicated report of child abuse. Petitioners simply cannot collaterally attack the validity of the indicated report of child abuse as part of the present proceeding.[5]

This Court has similarly denied attempts to collaterally attack the outcome of one administrative proceeding as part of a second administrative proceeding in the context of driver licensing. *See Fetty v. Department of Transportation, Bureau of Driver Licensing*, 784 A.2d 236 (Pa. Cmwlth.2001), and *Department of Transportation, Bureau of Driver Licensing, v. Doyle*, 151 Pa.Cmwlth. 171, 616 A.2d 201 (1992). In *Fetty,* the Pennsylvania Department of Transportation notified a licensee that his operating privilege was being suspended for a period of one year due to a DUI conviction in West Virginia. *Id.* The licensee did not appeal the suspension. *Id.* Thereafter, the Department notified the licensee that because he had been convicted of three major driving violations within a five-year period, it was designating him as a habitual offender and revoking his operating privilege for the statutory period. *Id.* As part of the revocation proceeding, the licensee attempted to attack the validity of the license suspension. *Id.* This Court noted that the licensee could not collaterally attack the validity of the suspension in the revocation proceedings. *Id.*

*Doyle* also involved a license revocation by the Pennsylvania Department of Transportation. In *Doyle,* this Court wrote that

"[i]n a license revocation appeal, the trial court is limited to a determination of whether the driver was convicted and whether the Department acted in accordance with the statute. The relevant inquiry is not whether the driver should have been convicted of the underlying offense, but whether he was convicted." *Doyle,* 616 A.2d at 202. Petitioners' attempt to collaterally attack the indicated report of child abuse as part of the present proceeding for the revocation of Petitioners' certificate of compliance to operate a day care facility is analogous to the attempts of the individuals in *Fetty* and *Doyle* to collaterally attack their license revocations, and hence, it is impermissible in this proceeding.

Accordingly, we affirm the order of DPW, dated January 2, 2003, affirming the order dated August 30, 2002, of DPW's Bureau of Hearings and Appeals, granting summary judgment in favor of DPW and thereby revoking Petitioners' certificate of compliance to operate a child day care center pursuant to 55 Pa.Code § 20.71(b)(5).

### ORDER

AND NOW, this 8th day of July, 2003, the order of the Secretary of the Department of Public Welfare, dated January 2, 2003, is hereby affirmed.

---

**5.** Given that Petitioners are not entitled to pursue an appeal *nunc pro tunc* of the finding of an indicated report of child abuse as part of this proceeding, we do not need to address the remainder of Petitioners' arguments.